IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TERRANCE WESTLEY SPEED,<br><br>       Plaintiff,<br>v.<br><br>CONTEMPORARY INFORMATION CORP.,<br><br>       Defendant. | Case No.: 8:25-cv-03390<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Terrance Westley Speed ("Plaintiff") brings this action on an individual basis, against Contemporary Information Corp. ("Defendant" or "CIC") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, arising out of Defendant's mixing Plaintiff's credit file with another consumer.

## PARTIES

1. Terrance Westley Speed ("Plaintiff") is a natural person residing in Tampa, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

2. Defendant Contemporary Information Corporation ("Defendant" or "CIC") is a company that provides background screening services for landlords and residential real estate management companies, doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 3700 Crestwood Pkwy NW #300 - Duluth, GA 30096. CIC can be served at its registered agent

for service Registered Agent Solutions Inc. at 900 Old Roswell Lake Pkwy, Suite 310, Roswell, GA, 30076.

3. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

4. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

5. CIC is also a "Reseller" as that term is defined by 15 U.S.C. § 1681a(u).

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

1. The FCRA governs the conduct of consumer reporting agencies ("CRA" or "CRAs") in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

2. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

3. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

4. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

5. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

6. Resellers purchase consumers' credit information from other CRAs, such as non-parties Experian, Equifax and Trans Union.

7. Once Defendant CIC receives consumer credit information from other CRAs, it assembles and merges the information into a credit report, which it then sells to third parties.

8. Resellers, like Defendant CIC, are subject to the FCRA's requirement to use reasonable procedures to assure maximum possible accuracy of the information in the consumer reports they sell. 15 U.S.C. § 1681e(b).

9. Courts have repeatedly held that Resellers, like Defendant CIC, do not meet the requirements of Section 1681e(b) by merely reproducing the information furnished to them by other credit bureaus. *See, Rogue v. CoreLogic Credco, LLC*, No. 19-cv-00260-BLW, 2020 WL 7061745 at *4 (D. Idaho Dec. 2, 2020) ("[D]istrict courts have repeatedly rejected Credco and other resellers' arguments that a reseller is only required to accurately reproduce the information furnished to it by other credit bureaus. These courts have, instead, found that, as a matter of law, a reseller can be subject to liability under § 1681e(b) for failing to follow reasonable procedures to assure the maximum possible accuracy of the information it provides on a consumer"); *Starkey v. Experian Information Solutions, Inc.*, 32 F. Supp. 3d 1105, 1109-11 (C.D. Cal. 2014) (rejecting Credco's argument that its report was "accurate" because it "fully and accurately included all of the information [the CRAs]

provided," holding that a reseller, like other consumer reporting agencies, must employ reasonable procedures to assure the maximum possible accuracy of the information in its report); *Dirosa v. Equifax Information Servs, LLC*, 2014 WL 3809202, at *3 (C.D. Cal. Jan. 21, 2014) (rejecting Credco's argument that it was not liable under § 1681e(b) because it "fully and accurately included all of the information [the CRAs] provided"); *Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at **3-4 (D. NJ. Sept. 29, 2015) (rejecting Credco's argument that its procedures were reasonable as a matter of law under § 1681e(b) "because it accurately compiled and reported information collected from the credit bureaus"); *Willoughby v. Equifax Svs., LLC*, 2013 WL 8351203, at **2-3 (N.D. Ala. Aug. 12, 2013) (finding that resellers are subject to the same requirements under § 1681(b) as other consumer reporting agencies to follow reasonable procedures to assure the accuracy of its reports); *Waterman v. Experian Information Solutions, Inc.*, 2013 WL 675764, at **2-3 (C.D. Cal. Feb. 25, 2013) (same); *Dively v. Trans Union, LLC*, 2012 WL 246095, at **3-4 (E.D. Penn. Jan. 26, 2012) (same).

10. The Federal Trade Commission has also explained that "[p]ersons who purchase consumer reports for resale (also known as 'resellers') are covered by the FCRA as consumer reporting agencies, and have all the obligations of other CRAs..." Prepared Statement of Fed. Trade Commiss. On the Fair Credit Reporting Act Before the Senate Banking Committee on Banking, Housing, and Urban Affairs, 2003 FTC LEXIS 101, 14-15 (July 10, 1993).

11. Notwithstanding all this notice, Defendant CIC continues to sell consumer reports without sufficient independent investigation, audits, research, or review to assure that the information in the reports is accurate.

12. Further, under 15 U.S.C. §1681i(f), when a consumer disputes the accuracy or completeness of data contained in a Reseller's report, the Reseller has an independent duty to conduct a reinvestigation if the inaccuracy results from its own erroneous conduct.

13. On the other hand, Section 1681i(f) also permits a Reseller to merely "forward" a dispute only when the underlying inaccuracy originates with the source CRA. However, it does not relieve a Reseller from reinvestigating errors caused by its own system, or compilation procedures.

14. Accordingly, Plaintiff brings claims against Defendant CIC for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b); and for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate, and for failing to update Plaintiff's consumer report by delete the disputed information, in violation of the FCRA, 15 U.S.C. § 1681i.

## FACTUAL ALLEGATIONS

### Defendant's Inaccurate Reporting

8. In or about May 2025, Plaintiff completed and submitted an application for a mortgage through Pillar Mortgage Company LLC's ("Pillar Mortgage").

9. For Pillar Mortgage to make a determination on Plaintiff's mortgage application, it would need to obtain copies of his credit files. Plaintiff provided Pillar

Mortgage with his personal identification information, including his Social Security number, and authorized it to obtain copies of his credit files.

10. On May 21, 2025, Defendant CIC sold a tri-merged credit report (the "Consumer Report") about Plaintiff to Pillar Mortgage in response to Plaintiff's mortgage application.

11. The Consumer Report was generated using data from three consumer reporting agencies, Equifax, Experian, and Trans Union. The Equifax portion of the report appeared under the name of a person unrelated to Plaintiff, "Robin E. Stead," which Defendant CIC inaccurately associated with Plaintiff's identifying information—including PC's full Social Security number.

12. The CIC Report displayed the name **"ROBIN E. STEAD" in the applicant header for Equifax-based score models with a different social security number than Plaintiff. The report also listed multiple open accounts, inquiries, and addresses that did not belong to PC, including *but not limited to*:

    a. OPEN ACCOUNTS:

- Name: TRUISTMTG
  Acct No.: *********1384
  Acct Type: Mortgage
  Balance: $150,045

- Name: TDAF
  Acct No.: ******6471
  Acct Type: Auto Loan
  Balance: $33,932

- Name: DISCOVER
  Acct No.: 601100******
  Acct Type: Revolving credit
  Balance: $3,701

- Name: BK OF AMER
  Acct No.: 549035**********
  Acct Type: Revolving credit
  Balance: $2,607

- Name: BRCLYODNVY
  Acct No.: 411080******
  Acct Type: Revolving credit
  Balance: $0

- Name: CBNA
  Acct No.: ************1091
  Acct Type: Revolving credit
  Balance: $0

b. ADDRESSES:

- 8513 ISLAND BREEZE LN UNIT 209, TEMPLE TERRACE, FL 33637
- 31032 STONE ARCH AVE, WESLEY CHAPEL, FL 33545
- 5022 SUNCATCHER DR, WESLEY CHAPEL, FL 33545

c. INQUIRES:

- SAN ANTONIO CITIZENS FINANCE 07/24/24
- B WELLS FARGO AUTO FINANCE 07/24/24
- B GM FINANCIAL FINANCE 07/24/24
- B LITHIA MOTORS/DRIVEW FINANCE 07/24/24
- B FLORIDA CREDIT UNION FINANCE 07/24/24
- B CHEVROLET OF WESLEY AUTOMOTIVE 07/24/24

13. Defendant's reporting was grossly inaccurate. The aforementioned accounts, inquiries, and addresses did not belong to Plaintiff and were instead attributable to Robin Stead.

14. Therefore, the Consumer Report provided to Pillar Mortgage by Defendant CIC was patently false on its face.

15. By reporting the aforementioned accounts, inquiries and other personal information in the consumer report about Plaintiff, despite the fact that the accounts and information do not belong to Plaintiff, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

**Pillar Mortgage Informs Plaintiff he Does Not Qualify Because of the Inaccurate Reporting**

16. Plaintiff was shocked and concerned by the appearance of the inaccurate information on his consumer reports, and was worried about not just the impact on his mortgage application, but the impact on his future.

17. On or about June 3, 2025, Plaintiff contacted Truist and TD Auto Finance and confirmed that neither had accounts associated with his name or social security number. However, when he used the account numbers shown on Defendant's consumer report pertaining to such account, accounts belonging to Robin Stead were located.

18. On June 16, 2025, Pillar Mortgage informed Plaintiff that he is ineligible because of the Truist Mortgage and TD Auto Finance tradelines and that he would continue to be ineligible until such tradelines were deleted from his consumer report.

19. The Pillar Mortgage representative further explained that for Plaintiff to qualify for the mortgage, the transactions linked to Truist Mortgage and TD Auto Finance needed to be removed from his credit report.

### Plaintiff's June 2025 Dispute to Defendant

20.     On or about June 25, 2025, worried that something was very wrong with his credit file, Plaintiff sent an online dispute to Defendant.  Specifically, Plaintiff disputed that the inaccurate tradeline, inquiries, and other personal information associated with Robin Stead did not belong to him.

21.     Along with his dispute letter, Plaintiff enclosed a copy of his driver's license to better assist Defendant in identifying him in its system.

22.     Plaintiff requested that Defendant reinvestigate the disputed information, correct the reporting, and send Pillar Mortgage a corrected copy of his credit report.

### Defendant's Unreasonable Dispute Reinvestigation

23.     On July 8, 2025, Defendant informed Plaintiff that it did not have the ability to modify or reinvestigate the disputed information within the credit bureau's database and advised Plaintiff to contact the credit bureau directly.

24.     However, when Plaintiff checked his Experian, Trans Union, and Equifax reports, none of the inaccurate information were contained therein, confirming that the erroneous reporting occurred with Defendant.

25.     On July 18, 2025, Defendant reversed itself and stated that Plaintiff was required to complete its dispute form so that CIC could "submit the disputes," contradicting its July 8 disclaimer of responsibility.

26.     On August 6, 2025, Defendant informed Plaintiff that it had forwarded his disputes to Equifax and Experian pursuant to 15 U.S.C. §1681i(f). Defendant, however,

disclaimed any responsibility to conduct its own reinvestigation, and incorrectly asserted that such duty rests with the credit reporting agencies that generated the reports.

27. Upon information and belief, the erroneous reporting resulted from an incorrect SSN input by Defendant at the time it pulled Plaintiff's credit file from Equifax.

28. Defendant failed to conduct a reasonable investigation of Plaintiff's June 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

29. Thereafter, and upon information and belief, Defendant failed to correct Plaintiff's consumer report.

## Plaintiff's Damages

30. As a direct and proximate result of Defendant's inaccurate reporting and mishandling of Plaintiff's consumer information, Plaintiff suffered both financial and credit-related harm.

31. As a result of Defendant's inaccurate reporting and failure to reinvestigate, Plaintiff's mortgage application could not proceed due to the inaccurate information.

32. Furthermore, Plaintiff experienced anxiety, confusion, and emotional distress from being falsely associated with another consumer's debts, from believing he may be the victim of identity theft, and from the stalled housing and mortgage opportunities.

33. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to; loss of ability to purchase and benefit from his credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's consumer report.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendant CIC)**

34. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

35. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

36. On at least one occasion, Defendant prepared patently false consumer reports concerning Plaintiff.

37. Defendant mixed another consumer's personal and credit account information onto Plaintiff's consumer, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

38. Defendant CIC violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

39. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to; loss of ability to purchase and benefit from his credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's consumer report.

40. Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

41. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation
## (Second Claim for Relief Against Defendant CIC)

42.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-33 as if fully stated herein.

43.     The FCRA mandates that Defendant conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

44.     The FCRA provides that if Defendant conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

45.     Plaintiff initiated a dispute with Defendant and disputed inaccurate information reporting on his consumer report and requested that Defendant correct and/or delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

46.     Defendant failed to respond to Plaintiff's dispute and conducted *no* investigation of Plaintiff's dispute, or such investigation, if any, was so unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

47.     Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record

the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

48. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to; loss of ability to purchase and benefit from his credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's consumer report.

49. Defendant's conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

50. Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: December 11, 2025

*/s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing NY 11367
T: (718) 701-4605
F: (718) 247-8020
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Terrance Westley Speed*
